

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/28/2012

| IN RE: | § | Case No. 11-36919 |
|---|---|---|
| JEREMY MITCHELL PATE, | § | Chapter 7 |
| Debtor(s). | § | Judge Isgur |

### MEMORANDUM OPINION

The United States Trustee moves to dismiss this case as abusive under § 707(b).  Because Mr. Pate neither filed nor prosecuted this case in a good faith effort at succeeding in his chapter 13 bankruptcy case, the case is dismissed.

### Facts

Mr. Pate filed a voluntary chapter 13 bankruptcy petition on August 11, 2011.  On October 25, 2011, Pate voluntarily converted the case to a case under chapter 7.  In a chapter 13 case, a portion of Mr. Pate's income would be available to make payments to the holders of unsecured claims in his case.  Conversely, in a chapter 7 bankruptcy case, Mr. Pate would receive a discharge of claims against him and none of his future income would be allocated to payment of his unsecured claims.

After Pate's chapter 13 bankruptcy filing, he was required to make payments to the chapter 13 trustee.  11 U.S.C. § 1326.  Pates' first payment to the chapter 13 trustee was due not later than 30 days after the petition date.  11 U.S.C. § 1326(a)(1).

During the two and one-half months in which he was in a chapter 13 bankruptcy case, Pate only paid $600.00 to the chapter 13 trustee.  However, his first payment (proposed by him to be $2,583.44) was due not later than September 11, 2011 and his second payment of $3,983.44 was due not later than October 11, 2011.  Accordingly, at the time that the case was converted , Pate had made 9.2% of the required payments.  The one payment made by Pate was made well after the date on which it was statutorily required.

Mr. Pate's schedules filed in the case reflected that he had the ability to pay the $3,983.44 each month.

To be sure, Pate had serious financial pressures after he filed this case. His undisputed testimony is that he was engaged in a bitter child custody dispute with an abusive spouse. That dispute required him to divert funds from the chapter 13 trustee to payment of legal and amicus fees in his child custody dispute. However, the dispute was known by him when he filed the case.

Other post-petition financial difficulties did not arise from good faith behavior on his part. Mr. Pate had not filed income tax returns for many years. He blames this failure on his accountant. The returns were not filed until December, 2011, with some of the years being filed as late as March, 2012. Pate testified that it took him several months to file the returns because he needed to pay $2,100.00 in tax preparation fees. Those tax preparation expenses are not listed in any budget filed with the Court. Pate owes over $118,000.00 in back taxes.

Pate also testified that he is presently providing false W-4 withholding forms to his employer (he claims 9 exemptions, at least 7 of which are fictitious) in order to reduce the amount of his tax withholding. The intentional provision of false information to an employer on a W-4 form is a crime, if the false information is provided for the purpose of reducing the withholding of taxes. 26 U.S.C. § 7205. The Court will not ignore criminal conduct by Pate in carrying out his duties as a citizen to pay his federal income taxes. Already over $118,000.00 behind, Pate is now having less withheld for payment of taxes than is required by law.

In January, 2012, Pate filed amended schedules in his bankruptcy case. He listed gross income of $9,999.99. Although his schedules showed that his deductions from his gross pay and his monthly expenses left him with a monthly deficit of $840.00, that amount appears to have been highly inaccurate. By January, 2012, the child custody battle had ended and Pate had received joint custody of his child. The amended 2012 schedules reflect the increased food and clothing expenses

that resulted from the joint custody order (and a decrease of his child support payments). However, the 2012 statement also includes a monthly deduction of $2,000.00 for legal expenses for his child custody dispute. That dispute was terminated in late-2011. By the time that the amended schedule was filed, Pate no longer had this $2,000.00 per month expense. Pate also sought to deduct $594.00 for a car payment and $180.00 for a car warranty payment. Nevertheless, Pate was provided a vehicle by his employer and was allowed to drive the vehicle for personal use. The auto expenses were not reasonably necessary.

In March, 2012, Pate filed another amendment to his schedules. By that time, his wage income had increased to $13,400.00 per month. He nevertheless claimed a deduction of $2,000.00 for the non-existent legal fees (Pate claims that he was then spending the $2,000.00 per month with his bankruptcy lawyer to avoid chapter 13), and continued to claim the deductions for his personal vehicle. He also included an estimated payment to the IRS for pre-petition taxes. That monthly deduction was $1,094.63. However, he has made no payments to the IRS since the bankruptcy case was filed.

Accepting the validity of every other amount on his schedules, Pate would have had over $3,000.00 in disposable income available to pay his unsecured creditors in March, 2012 if he had not claimed the non-existent legal expenses and the non-existent IRS payments.

**Law**

The United States Trustee moves for dismissal under § 707(b)(3) of the Bankruptcy Code. Section 707(b)(3) modifies § 707(b)(1). Section 707(b)(1) provides for the dismissal of cases under chapter 7 of the Bankruptcy Code if the granting of chapter 7 relief would be an abuse. Although the United States Trustee emphasizes that she seeks relief only under § 707(b)(3), that section does not authorize relief that is independent of § 707(b)(1).

The first issue that the Court must address is whether § 707(b)(1) applies to a case converted to chapter 7, but originally filed in chapter 13. As orally announced by the Court at the hearing on July 23, 2012, the Court holds:

- Section 707(b)(1) does not apply to a case filed under chapter 13 and converted to a case under Chapter 7, if the original filing and later conversion were done in good faith.

- The Court will apply the standards set forth in M*arrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007) to determine whether the filing of the chapter 13 petition and the conversion to chapter 7 were done in good faith.

The majority of courts to have addressed the issue have determined that § 707(b)(1) does apply in a case converted from chapter 13 to chapter 7. However, the Court finds that the language of § 707(b)(1) simply does not support the majority view. The relevant portion of § 707(b)(1) is:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss *a case filed by an individual debtor under this chapter* whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

In the quoted text, the Court has emphasized the language that precludes the majority view. For § 707(b)(1) to apply, the case must have been filed by an individual debtor "under this chapter," with "chapter" referring to chapter 7. Although the United States Trustee has provided an excellent brief on the majority view, the Court rejects that view. None of the cases cited by the United States Trustee account for § 103 of the Bankruptcy Code. Section 103(b) provides that § 707 only applies to cases pending under chapter 7. The language "under this chapter" would be entirely unnecessary unless it is given its plain meaning—that the case must originally have been filed under chapter 7 rather than be pending under chapter 7. Moreover, the authority cited by the United States Trustee ignores the proper construction of statutes under Fifth Circuit law. *U.S. v. Diaz-Gomez,* 680 F.3d 477 ( 5th Cir. 2012). The Court will not apply the various canons of statutory construction unless the plain language is either ambiguous or leads to an absurd result. *Id.*

4 / 9

There is no ambiguity and the result is far from absurd. *See In re Layton,* 480 B.R. 392 (M.D. Fla. 2012).

To be sure, an argument exists that the word "filed" does not mean "filed" at all. Under that argument, "filed" means "pending." The Court might accept such a view if it were the only way to rationalize the statute. But, the Court concludes that "filed" can be applied with its plain meaning and produce a totally rational view.

The United States Trustee relies on four principal cases: *In re Perfetto*, 361 B.R. 27 (Bankr. D. R.I. 2007), *In re Lassiter*, 2011 WL 2039363 (Bankr. E.D. Va. 2011), *In re Chapman,* 447 B.R. 250 (B.A.P. 8th Cir. Mar. 11, 2011) and *In re Willis*, 408 B.R. 803 (Bankr. W.D. Mo. 2009).

The Debtor relies primarily on *In re Dudley,* 405 B.R. 790 (Bankr. W.D. Va. 2009), *In re Fox,* 370 BR 639 (Bankr. D. NJ 2007) *and In re Miller,* 381 BR 736 (Bankr. W.D. Ark. 2008).

The Court has located one additional authority, issued after the parties filed their briefing. *In re Layton,* 480 B.R. 392 (M.D. Fla. 2012). The Court finds *Layton* highly persuasive and adopts its conclusions.

The issue in *Perfetto* was whether the Debtor would be required to file a chapter 7 means test under Interim Federal Rule of Bankruptcy Procedure 1007(b)(4). The Court ordered that the chapter 7 means test was required to be filed in a converted case. *In re Perfetto*, 361 B.R. 27 (Bankr. D. R.I. 2007). The case, in dicta, held that the 707(b) dismissal standards would apply in a converted case, relying on the legal presumption that a case was "filed" under whatever chapter it was currently pending. To do so, the Court relied on 11 U.S.C. § 348(a). Section 348(a) does not even mention the word "filed" but instead determines when the order for relief is effective. Despite the reliance placed on it by many Courts, this Court does not find that § 348 makes the language of § 707(b) ambiguous.

*Lassiter* holds that the word "filed" in the above quoted sentence from § 707(b) only references that the case was filed "by an individual debtor" and does not reference that the case was filed "under this chapter." *In re Lassiter*, 2011 WL 2039363 (Bankr. E.D. Va. 2011). The Lassiter Court acknowledges that either reading is sensible, but reads out the words "under this chapter" through a contextual analysis that leaves section 707(b) and evaluates multiple provisions of the Code. Until the Court determines that a phrase is ambiguous or produces an absurd result, it will not resort to the various canons of statutory construction. Put simply, the phrase is only ambiguous if the reader decides to make it so under the canons. But, when the Court reads an unambiguous phrase, it should not commence a process to create an ambiguity. *U.S. v. Diaz-Gomez,* 680 F.3d 477 (5th Cir. 2012).

*Chapman* relies on a 1982 Eighth Circuit opinion on whether property of the chapter 13 case is deemed property of the chapter 7 case following conversion. *In re Chapman,* 447 B.R. 250 (B.A.P. 8th Cir. Mar. 11, 2011). However, that case relies on § 348 and does not evaluate the language of § 707(b) at all. *Resendez v. Lindquist,* 691 F.2d 397 (8th Cir. 1982)

*Willis* is largely an evaluation of the cases referenced elsewhere in this opinion. However, it begins with the assumption of ambiguity and looks to the canons of statutory construction to evaluate the meaning of the phrase. For the reasons set forth above, that is not an appropriate exercise. *In re Willis*, 408 B.R. 803 (Bankr. W.D. Mo. 2009).

*Layton* properly evaluates the statute, finds the language unambiguous, and refuses to change it. *In re Layton,* 480 B.R. 392 (M.D. Fla. 2012). It is the correct approach.

### Application of the Law to the Facts

Chapter 13 is the chapter of the Bankruptcy Code where wage earners, like Pate, agree to devote a portion of their future income to payment of their debts. In exchange for doing so, they may retain certain property and may obtain a discharge of the balance of their unpaid debts. In a chapter 7

bankruptcy, no future income is devoted to creditors.  The debtor may nevertheless obtain a discharge.

Congress has chosen to channel more debtors into chapter 13 so that a portion of future income would be devoted to creditors.  If a person files chapter 7, the abuse provisions of § 707(b) re-channel certain abusive debtors into a chapter 7 bankruptcy.  But, what if a debtor files chapter 13, makes a good faith effort, and fails?  In that instance, there is no indication that Congress intended permanently to bar a debtor, who acts in good faith, from receiving a bankruptcy discharge.

The issue before the Court is whether Pate filed and prosecuted his chapter 13 case in good faith.  If he did, his case should remain.  If he did not, it should be dismissed rather than be allowed to remain in chapter 7.  M*arrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007).

This is the same issue addressed in *Layton.*  In that case, Layton filed chapter 13 when she was able to make payments.  She later lost her job, was unable to make payments, and converted her case.  Her actions had at all times been taken in good faith.  The Court found that § 707(b) did not apply, and that the filing and prosecution of the case were not abusive.  *In re Layton,* 480 B.R. 392 (M.D. Fla. 2012).  The case was not dismissed.  *Id.*

Unfortunately, Pate cannot match Layton's bona fides.  In this case, Payton's post-petition financial difficulties arose from facts know to him on the date of his filing.  Although it is true that he might not have known the specific amounts of funds that his child custody case would require, he was well aware of the prolonged and expensive fight that he had been undertaking.

During the two and one-half months in which he was in a chapter 13 bankruptcy case, Pate only paid $600.00 to the chapter 13 trustee.  However, his first payment (proposed by him to be $2,583.44) was due not later than September 11, 2011 and his second payment of $3,983.44 was due not later than October 11, 2011.  Accordingly, at the time that the case was dismissed, Pate had made 9.2% of the required payments.

Pate's only payment was made on October 4, 2011, nearly one month late. The payment was for approximately one-quarter of the amount previously due. He made none of the second month's payment.

Although Pate encountered his child custody and other expenses, Pate quickly regained his financial capabilities. However, he filed schedules that misrepresented those capabilities and did not even attempt to resume his payments. As set forth above, Pate's schedules—if they had been accurate—would have reflected over $3,000 per month of income available for payment to his creditors.

Pate was not without bankruptcy alternatives. Inasmuch as his financial difficulties were known to him on his filing date, he could have filed a chapter 7 bankruptcy petition and argued that he should be allowed to remain in chapter 7 despite his financial capabilities. That would have allowed the parties squarely to address the issue in the context of § 707(b). Instead, Pate filed what he now portrays to have been a hopeless attempt at chapter 13.

Pate did not file or prosecute the chapter 13 case in good faith. He filed it without a meaningful hope of short term success, did not strive to perform, and then filed misleading schedules. The Court also must note that Pate owes the Internal Revenue Service (a creditor in this case) over $118,000.00, but chooses to violate the law in providing for current withholding. The Court is cognizant of the fact that if Pate had submitted an appropriate W-4 form to his employer, he might have been entitled to a refund—and that the Internal Revenue Service may have kept the refund as a setoff against past due taxes. But, that possibility (that he might be required to pay the taxes that he owes) fails to justify his conduct.

The totality of the circumstances reflect that this case fails to meet the conversion standards established in M*arrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007).

## Conclusion

Pate neither filed nor prosecuted this case in good faith. It should be dismissed. A separate order dismissing the case will be issued.

SIGNED **December 28, 2012.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE